ALD-009                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1959
_____

CHRISTOPHER YOUNG,
                              Appellant

v.

TAMMY FERGUSON; DANIEL MYERS; BOBBI JO SALAMON; JENNIFER
ROSSMAN; DAVID LINK; STEFAN STESSNEY; TIMOTHY GRAHAM; JOHN
DANISON; W. MATTHEWS; JOSEPH DUPONT; JOHN WETZEL
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-18-cv-00879)
District Judge:  Honorable Christopher C. Conner
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 8, 2020
Before:  MCKEE, GREENAWAY, JR. and BIBAS, <u>Circuit</u> <u>Judges</u>

(Opinion filed December 2, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Appellant Christopher Young filed a civil rights action against numerous prison officials grounded on his temporary administrative placement in a restricted housing unit ("RHU").[1] Specifically, Young alleged that he was normally housed with the general population at SCI Albion as he was a "custody level 3-4" prisoner. He complained that, on five separate occasions when he was temporarily taken to SCI Benner for court appearances, he was placed in "administrative custody" and housed in the RHU, which limited his access to the phone, law library, and outdoor recreation time, among other things.

Young filed grievances while being held at SCI Benner on at least four occasions. The review committee responded each time, noting that it was prison policy to house temporary transfers in the RHU and that, on three occasions, lack of bed space prevented Young from being housed with the general population. In his complaint, Young alleged that his placement in the RHU violated his rights under the Eighth and Fourteenth Amendments. The District Court granted summary judgment in favor of six defendants and granted the remaining defendants' motion to dismiss. Young appealed.

This Court has jurisdiction under 28 U.S.C. § 1291, and we review the District Court's orders granting the defendants' motions de novo. See Tundo v. County of

---

[1] Because we write primarily for the benefit of the parties, we will recite only the facts necessary for the discussion.

Passaic, 923 F.3d 283, 286 (3d Cir. 2019) (summary judgment); Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018) (motion to dismiss). We may summarily affirm on any ground supported by the record if the appeal fails to present a substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam); 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

In order to state an Eighth Amendment claim, Young must establish that he was denied "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim, Hudson v. McMillen, 503 U.S. 1, 8-9 (1992), such as when a prisoner has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault, Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). Placement in administrative segregation, by itself, is insufficient to constitute cruel and unusual punishment. See Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981).

Young has not alleged any deprivation that would be sufficient under the Eighth Amendment. In his deposition, Young stated that the cells in the RHU were the same as those in the general population. He received food on a daily basis and was able to exercise and shower regularly. While Young identified some differences between the RHU and the general population, such as longer waiting time for cleaning supplies to be delivered and limited access to the phone, Young was provided "life's necessities."

Young's equal protection claim also fails.  He does not allege membership in a suspect class or interference with a fundamental right, so he must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 423 (3d Cir. 2000).  We agree with the District Court that Young was similarly situated to inmates who were temporary transfers to SCI Benner.  By Young's own admission, all temporary transfers were placed in administrative custody and housed in the RHU.  Young was not treated differently.[2]

Finally, the District Court properly concluded that the claims against certain defendants (Wetzel, Danison, Matthews, Dupont, and Graham) failed because they were not directly involved in the alleged constitutional violations.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998).  Young alleged simply that he disagreed with the way those defendants responded to his grievances, which generally is not the basis for a claim.  See id.

Accordingly, we will affirm the judgment of the District Court.

---

[2] To the extent that Young alleged a due process violation under the Fourteenth Amendment, his temporary administrative confinement in the RHU did not implicate a liberty interest.  See Torres v. Fauver, 292 F.3d 141, 151-52 (3d Cir. 2002) (holding that administrative segregation for 120 days did not implicate a protected liberty interest); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) ("[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest.").