**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 22-2142 & 22-2262
_____

UTILITY WORKERS UNITED ASSOCIATION, LOCAL
537, an unincorporated association, by J. Kevin Booth, Its
Trustee ad litem,

Appellee in 22-2142/
Cross-Appellant in 22-2262

v.

UTILITY WORKERS' UNION OF AMERICA, AFL-CIO,
an unincorporated association; D. MICHAEL LANGFORD,
an individual; MICHAEL COLEMAN, an individual; JOHN
DUFFY, an individual; UTILITY WORKERS' UNION OF
AMERICA, AFL-CIO, LOCAL 537,
an unincorporated association,

Appellants in 22-2142/
Cross-Appellees in 22-2262

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cv-01077)

Magistrate Judge: Honorable Lisa Pupo Lenihan
_____

Argued April 19, 2023

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges*

(Filed: August 3, 2023)

Caitlin D. Kekacs
Andrew D. Roth [ARGUED]
Bredhoff & Kaiser
805 15th Street NW
Suite 1000
Washington, DC 20005

Michael J. Healey
Healey & Hornack
247 Fort Pitt Boulevard
4th Floor
Pittsburgh, PA 15222
        *Counsel for Appellant/Cross-Appellee*

Samuel J. Pasquarelli [ARGUED]
Sherrard German & Kelly
535 Smithfield Street
Suite 300
Pittsburgh, PA 15222
        *Counsel for Appellee/Cross-Appellant*

———————————

OPINION OF THE COURT

———————————

HARDIMAN, *Circuit Judge.*

These appeals involve a dispute between labor unions. The controversy began when Local 537 of the Utility Workers' Union of America, AFL-CIO (UWUA) sought to disaffiliate. UWUA learned of Local 537's planned disaffiliation vote and imposed a trusteeship the same day that an overwhelming majority of Local 537 members voted to form a new union— Utility Workers United Association, Local 537 (Independent 537). UWUA obtained a preliminary injunction to enforce its trusteeship over Local 537 and keep Local 537's assets. Independent 537 then brought a civil action to recover those assets. The District Court granted Independent 537 summary judgment and equitable relief but denied its request for attorneys' fees. Both parties appealed. We will affirm.

I

A

Members of Local 537 felt that they were getting "nothing" from UWUA and wanted to withdraw from the National Benefits Agreement UWUA had negotiated with a public utility called American Water. App. 349. So the officers of Local 537 decided to call a vote on disaffiliation. The disaffiliation vote was scheduled for Monday, March 19, 2018, with notices posted on March 2 and March 14. In anticipation of disaffiliation, the officers of Local 537 formed a new union,

Independent 537. Independent 537 was an unincorporated association with the same officers as Local 537 and virtually identical bylaws as UWUA.

UWUA officers learned of the impending vote on Friday, March 16, three days before it was to occur. So they met over the weekend on Sunday, March 18, to plan next steps. UWUA President D. Michael Langford declared an emergency trusteeship over Local 537, effective March 19, the same day as the planned disaffiliation vote, and appointed UWUA Vice-President John Duffy as Trustee.

On March 19, a series of meetings took place in which nearly 90 percent of Local 537 members who cast ballots voted to disaffiliate Local 537 from UWUA and to make Independent 537 the new bargaining representative of all 637 members in the approximately 21 bargaining units then represented by Local 537. That same day, UWUA President Langford sent notices of the trusteeship to Local 537's officers and members, stating: "all moneys, books and property of the Local . . . must be turned over to the Trustee," and "[a]ll Local 537 System and District Officers are hereby removed." App. 354.

At first, the removed officers refused to comply with the trusteeship. They continued to act as officers and declined to turn over Local 537's property to Trustee Duffy. That prompted UWUA to sue the Local 537 officers in federal court seeking a preliminary injunction to enforce the trusteeship and to require the removed officers to turn over Local 537's assets.

UWUA's suit did not proceed far. On April 19, just three weeks after it was filed, the removed officers agreed to the entry of a consent order that granted UWUA the preliminary injunctive relief it had requested. The removed

4

officers delivered Local 537's assets to Duffy and promised to cease and desist from holding themselves out as officers of both Local 537 and Independent 537.

After the consent decree was entered, the former officers of Local 537 did not go away quietly. In their capacity as individual employees, they filed petitions with the National Labor Relations Board to decertify Local 537 as the bargaining representative of the employee-members in three of the Local's bargaining units. They prevailed when, in December 2018, the Board conducted decertification elections and certified Independent 537 as the new bargaining representative of the employee-members in each of the three bargaining units of the former Local 537.

After the Board's decision, UWUA withdrew its trusteeship lawsuit, terminating the consent order. Neither the Court nor the Board ever determined whether UWUA had lawfully imposed the trusteeship.

By May 2019, representation of all bargaining units previously represented by Local 537 had been transferred, either to Independent 537 or another UWUA local affiliate. On May 8, UWUA formally lifted the trusteeship and revoked Local 537's charter. UWUA then invoked a section in its constitution permitting forfeiture of assets upon revocation of a local union's charter and took possession of Local 537's "books, monies and property." App. 387, 523.

B

After UWUA revoked Local 537's charter and seized its assets, Independent 537 went to federal court. Independent 537 sued UWUA, Local 537, and three UWUA officers under

5

the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 *et seq*., and the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 *et seq*. Independent 537 requested an injunction ordering UWUA to return: (1) all the books, records, and documents of Local 537; (2) Local 537's social funds belonging to the employees of the districts now represented by Independent 537, plus interest; (3) the dues, property, and assets of Local 537; (4) reimbursement of any decrease in value of any of the property taken from Local 537; and (5) punitive damages and attorneys' fees.

The parties consented to proceed before a Magistrate Judge. The District Court entered three orders adverse to UWUA: (1) an order denying UWUA's Rule 12(b)(1) and 12(b)(6) motions to dismiss; (2) an order denying UWUA's summary judgment motion and granting summary judgment to Independent 537 to the extent Independent 537 sought equitable distribution of Local 537's assets but denying Independent 537's request for attorneys' fees; and (3) a final judgment and decree of equitable relief distributing to Independent 537 a portion of the funds held by former Local 537 and books and records related to the bargaining units or districts now represented by Independent 537.

UWUA timely appealed, arguing that the District Court: (1) lacked subject matter jurisdiction; (2) erred in its summary judgment rulings; and (3) abused its discretion in awarding so high an equitable sum. Independent 537 cross-appealed to challenge the amount of the award, seeking to recoup all of Local 537's assets, as well as attorneys' fees.

6

II

We have appellate jurisdiction under 28 U.S.C. § 1291. UWUA contends the District Court lacked subject matter jurisdiction over Independent 537's suit, although its arguments relate to both subject matter jurisdiction and statutory standing. The parties dispute whether: (A) there is a contract between labor organizations over which we have jurisdiction and (B) Independent 537 has standing to enforce that contract. We review these legal issues de novo. *See In re Phar–Mor, Inc. Sec. Litig.*, 172 F.3d 270, 273 (3d Cir. 1999) (jurisdiction); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (standing).

A

The District Court found there was jurisdiction under both LMRA § 301, and LMRDA Title I, § 102. We agree that the District Court had jurisdiction under LMRA § 301. Section 301 of the LMRA grants federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations. . . ." 29 U.S.C. § 185(a); *see also id.* § 185(c).

The existence of a contract is no longer a jurisdictional element of a § 301 claim. *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Loc. Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) and adopting the standard set in *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1006–07 (6th Cir. 2009)). The existence of the contract is instead an element of the cause of action. *Id.* So UWUA's contention that Independent 537 "is not and never has been a party" to any contract with the UWUA

7

does not affect our jurisdiction. *See* UWUA Br. 22.

In any event, there is a contract between labor organizations here: the UWUA constitution and its bylaws. *See United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. v. Local 334*, 452 U.S. 615, 622 (1981) ("[A] union constitution is a 'contract' within the plain meaning of § 301(a)."). The Supreme Court has held that union members are third-party beneficiaries of their parent union's constitution, which enables them to sue under § 301 for violations of a union constitution even when they were not original parties to the contract. *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 101 (1991). The former members of Local 537 thus have rights as third-party beneficiaries of the UWUA constitution, the contract between UWUA and Local 537.

UWUA also argues that Independent 537 did not allege in its Complaint that its members have third-party beneficiary rights. But it did, even if indirectly. The Amended Complaint asserts that the constitution was a contract between UWUA and the *members* of Local 537, including those who later joined Independent 537. And Independent 537's claim for social funds is that the funds are the property of *members* (not any specific union) and is based on the premise that the members of Local 537 have rights as beneficiaries of the UWUA constitution.

UWUA's related fallback position, that third-party rights are limited to "current" union members, is unsupported by caselaw. *See* UWUA Br. 23–24. Although the parties in *Wooddell* were then members of the unions they sued, nothing in that case indicates that third-party beneficiary rights are limited to current members. *See Wooddell*, 502 U.S. at 95–96,

8

100; *see also Lewis v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 771*, 826 F.2d 1310, 1314 (3d Cir. 1987) (holding that federal courts have jurisdiction under § 301(a) "over suits brought by an individual union member against his or her local union or the international union for violation of a union constitution"). UWUA's theory would deprive the family of deceased members of any rights under union contracts. *See generally United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 374–75 (1990) (assuming the right of survivors of killed miners to sue under LMRA § 301 and reversing on other grounds). And union members cannot be forced to remain with a union merely to sue for their rights under a union constitution.

B

We turn next to the question of Independent 537's standing to sue on behalf of the former members of Local 537. LMRA § 301(b) establishes that a labor organization "may sue or be sued as an entity and *in behalf of* the employees whom it represents in the courts of the United States." 29 U.S.C. § 185(b) (emphasis added). Independent 537 is a labor organization that represents employees in an industry affecting commerce. And it satisfied § 301(b) because it sued on behalf of the former members of Local 537.

UWUA argues that nowhere in the Amended Complaint does Independent 537 say it is suing on behalf of anyone. Although Independent 537 pleaded in its Amended Complaint that it is the "successor" to Local 537, this claimed status is not dispositive of Independent 537's standing. App. 83–84. We agree with the District Court that Independent 537 is not a legal successor-in-interest. *See Utility Workers United Ass'n, Loc. 537 v. Utility Workers' Union of Am., AFL-CIO*, 2022 WL

9

254389, at \*11–12 (W.D. Pa. Jan. 27, 2022). The NLRB has already determined that Independent 537 is a completely new labor organization. Dist. Ct. Dkt. No. 19-cv-00580-LPL, ECF No. 23-3, Ex. 3; *see also Utility Workers United Ass'n, Loc. 537 by Booth v. Pennsylvania Am. Water Co.*, 838 F. App'x 686, 688 n.2 (3d Cir. 2020) (affirming the same). And we agree that Independent 537 has no right to sue on its own behalf for the property of former Local 537. But this case is not about successorship status for collective bargaining agreements, and Independent 537 is not suing on its own behalf. Instead, Independent 537 pleaded that its members, all of whom are former members of Local 537, have third-party beneficiary rights under the UWUA constitution, and that Independent 537 sued to enforce those rights on their behalf. *See, e.g.*, App. 90 ("the dues, property and assets are the property of the Association *and its members*. . . ) (emphasis added). Congress expressly authorized such a suit on behalf of third-party beneficiaries in the LMRA § 301(b). So Independent 537 has standing.

For these reasons, we hold the District Court had subject matter jurisdiction under LMRA § 301 and Independent 537 has standing to sue UWUA on behalf of the former members of Local 537.

III

We next consider the District Court's order partially granting Independent 537's motion for summary judgment and denying UWUA's cross-motion for summary judgment. Our review is de novo. *Tundo v. County of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019). Summary judgment is proper if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

10

Fed. R. Civ. P. 56(a).

UWUA asks us to reverse and vacate the summary judgment for Independent 537 based on its view that Independent 537's consent to the preliminary injunction enforcing the trusteeship rendered the disaffiliation ineffective. UWUA claims that its revocation of Local 537's charter was a valid exercise of its power under the UWUA constitution, giving UWUA a right to all the assets of the former Local 537. The District Court disagreed, holding that Independent 537 is entitled to summary judgment *even if* the forfeiture provisions in the constitution remained applicable. *Utility Workers*, 2022 WL 254389, at *9. We agree with the District Court.

Independent 537 has a right to equitable distribution of Local 537's assets because UWUA breached the fiduciary duty it owed to former members of Local 537 under LMRDA § 501. That section provides, in relevant part:

> The officers . . . of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members. . ., [and] to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization. . . .

29 U.S.C. § 501(a).

11

Duffy and Langford were "officers" of Local 537. *See* LMRDA § 3(n), 29 U.S.C. § 402(n) (defining "Officer" to include "any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization"). Duffy, as Trustee, was authorized to "take full charge of the affairs" of Local 537, to remove and temporarily appoint officers, and to take such other action he deemed necessary to preserve Local 537's interest. App. 401 (UWUA const., art. IV, sec. 6-B (2)). Langford, as UWUA President, was authorized to supervise and control Duffy's conduct as Trustee. *Id.*

Both Duffy and Langford owed fiduciary duties to Local 537 under LMRDA § 501. As such, they had to refrain from dealing adversely to Local 537 *and* "its members as a group," including by avoiding any conflict of interest. *See* LMRDA § 501(a). Duffy and Langford breached that duty as a matter of law. Once Duffy was appointed as Trustee, his duties to UWUA in his role as its Vice President created a direct conflict of interest with his duties to Local 537 and its members as the Trustee of Local 537's constructive trust. Similarly, Langford's duties to UWUA as its President created a direct conflict of interest with his duties in supervising and controlling the conduct of Langford as Trustee. Duffy and Langford's positions enabled their use of the trusteeship power to keep Local 537 affiliated and bound by the constitution while they proceeded to disband its membership and revoke its charter, triggering forfeiture of its assets to and for the benefit of UWUA. On UWUA's view, Independent 537's attempts to disaffiliate were "in opposition to the UWUA's interests from the moment of its inception." UWUA Br. 22. UWUA's revocation of the charter and seizure of Local 537's assets— only after the Local had no members left—was therefore self-

12

dealing.

These breaches of fiduciary duty render unenforceable UWUA's invocation of the forfeiture provision of its constitution. We will not reward UWUA for orchestrating a conflict of interest. The District Court was correct to find that Independent 537 is entitled to a share of the assets of the former Local 537 on behalf of Local 537's former members. Independent 537 was thus entitled to summary judgment and equitable distribution of the assets.

IV

Both parties contend that the District Court erred in the amount of money it awarded Independent 537. As a threshold matter, the parties disagree about our standard of review. UWUA says abuse of discretion applies. Independent 537 seeks plenary review. Neither party cites any caselaw. We agree with UWUA because we see no reason to deviate from the standard we generally apply to equitable decisions: abuse of discretion. *See, e.g.*, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001).

After thoroughly considering UWUA's appeal and Independent 537's cross-appeal, we perceive no abuse of discretion in the equitable distribution of the assets. The District Court awarded Independent 537 a sum of $632,667.01 of the $951,466 in Local 537's assets, along with certain books and records. The Court's calculation was based on the parties' accountings and proposed allocations, including UWUA's second allocation after it failed to comply with the first Court order for proposed allocation. The Court distributed the undifferentiated funds, earnings, and expenses "in proportion to the historical contributions to UWUA [ ]'s funding of the

13

bargaining units now represented by each union." *Utility Workers*, 2022 WL 254389, at \*15.

UWUA argues that the District Court abused its discretion by not awarding it \$193,486.01, the pro rata share of the dues paid to Local 537 during the time when the Local was in trusteeship. UWUA is right that it was legally obligated by the consent order to represent the members of Local 537 during the trusteeship. Consistent with that principle, the Court awarded UWUA legal and arbitration expenses, an equitable decision supported by Independent 537's position on the allocation. *See Utility Workers United Ass'n, Loc. 537 v. Utility Workers' Union of Am., AFL-CIO*, 2022 WL 2289832, at \*1 & n.3, 3 (W.D. Pa. June 13, 2022). But that doesn't mean that the District Court abused its discretion in denying UWUA the rest of the dues unrelated to the legal fees. We are persuaded by caselaw establishing that contributions from individual union members are held in trust to benefit those members. *See, e.g.*, *United States v. Goad*, 490 F.2d 1158, 1162 (8th Cir. 1974); *see also Boilermakers v. Loc. Lodge D129*, 910 F.2d 1056, 1062 (2d Cir. 1990) (holding that a portion of defunct local union's assets that did not belong to the International "should . . . be returned to the reconstituted local in whatever form it now exists"). So there was no abuse of discretion in awarding Independent 537 the dues paid during the trusteeship.[1]

---

[1] UWUA is correct that Independent 537 made no arguments against UWUA's claim to the \$193,486.01. But UWUA itself failed to make a specific argument that this was a forfeiture. Therefore UWUA forfeited any forfeiture argument. *See Altice USA, Inc. v. New Jersey Bd. of Pub. Utilities*, 26 F.4th 571, 575

14

Independent 537 argues on cross-appeal that it should have received *all* of Local 537's former assets.[2] It cites *Tile* for the proposition that all assets move to a new union after disaffiliation. *See Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters Int'l Union AFL-CIO v. Tile, Marble, Terrazzo, Helpers and Finishers Loc. 32*, 896 F.2d 1404, 1413 (3d Cir. 1990). But in *Tile*, "virtually the whole membership of TMT Local 32 resigned." *Id.* Here, not every member of Local 537 joined Independent 537. The District Court was correct that Independent 537 cites no caselaw holding that *all* assets of a prior union automatically pass to a new union. For these reasons, the District Court did not abuse its discretion in awarding Independent 537 $632,667.01 in equitable relief.

V

Finally, Independent 537 cross appeals the District Court's order denying attorneys' fees. We agree with the District Court that Independent 537 has no legal entitlement to attorneys' fees. Nothing in the UWUA constitution authorizes an award of attorneys' fees for its breach, and "no statute authorizes fee shifting in section 301 cases." *Ames v. Westinghouse Elec. Corp.*, 864 F.2d 289, 293 (3d Cir. 1988). We therefore apply "the American rule that each party to a lawsuit pay its own attorneys' fees." *Id.*

---

n.2 (3d Cir. 2022). We also review the District Court's equitable division of the assets for abuse of discretion and discern none here.

[2] "All" assets does not include per capita dues to UWUA, which would not be part of Local 537's property.

15

Independent 537 nevertheless claims it is entitled to attorneys' fees as a matter of equity because UWUA had no colorable basis to oppose the return of social funds. But even if we were to agree that equity could authorize an award of fees and the District Court had determined UWUA acted in bad faith in refusing to acknowledge that the disaffiliated members of Local 537 had a right to their social fees, Independent 537 proposed no specific amount expended to recover those fees by litigation. Independent 537 instead claims the number is too hard to calculate and so it should be awarded *all* its attorneys' fees. Such a blanket award would not be equitable, so the District Court did not err in declining to grant attorneys' fees to Independent 537.

* * *

Independent 537 properly brought this suit on behalf of its members who are former members of Local 537. Independent 537 was entitled to summary judgment and equitable distribution of the assets of the former Local 537. The District Court did not abuse its discretion in calculating the equitable award. Nor did the Court err in declining to award attorneys' fees. We will therefore affirm the orders of the District Court in all respects.

16